UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| POLY-AMERICA, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-2224-G |
| STEGO INDUSTRIES, L.L.C., | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Stego Industries, L.L.C. ("Stego") to dismiss the complaint of the plaintiff Poly-America, L.P. ("Poly-America") for lack of subject matter jurisdiction (docket entry 7). For the reasons discussed below, the motion is denied.

I. BACKGROUND

A. Factual Background

Poly-America is a limited partnership organized under the laws of the State of Texas that seeks to manufacture, market, and sell yellow polyethylene sheeting for use in the construction industry as a vapor barrier or vapor retarder. Complaint at 1-

2.  Stego -- a limited liability company organized under the laws of the State of Washington with its principal place of business in San Clemente, California -- researches, designs, develops, produces, and distributes high-performance geo-membrane materials used in various construction related applications.  *Id*.; Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction ("Motion") at 1-2.  Stego possesses a federally registered trademark for the color yellow as applied to "'plastic sheeting used in the construction industry as a vapor barrier and as a vapor retarder.'"  Complaint at 2 (quoting U.S. Reg. No. 2,790,352).  Poly-America believes that it may lawfully manufacture and sell a yellow vapor-barrier product of its own without seeking a license from Stego.  Complaint at 2.  Poly-America also has taken definite, concrete steps in manufacturing and marketing its yellow vapor-barrier product.  *Id.*

This is the second declaratory judgment action filed by Poly-America against Stego relating to the yellow vapor-barrier product.  The chain of events that triggered the filing of the first action began near the end of 2006, when Stego learned that Poly-America might begin selling a yellow vapor-barrier product that would compete with Stego's trademarked product.  Declaration of Paul Blasdel in Support of Defendant Stego Industries, L.L.C.'s Motion to Dismiss ("Blasdel Declaration") at 2, *attached to* Motion at A-2.  On January 3, 2007, Lee E. Johnson, an attorney for Stego, sent a letter to Poly-America that stated in part:

> It has recently come to our attention from industry sources
> that Poly America is considering selling a product that will

>compete with our client's plastic sheeting. It is our client's intention to vigorously enforce its trademark rights embodied in the trademark registration and its long time use. We therefore request in advance that you avoid any use of the color yellow with your products that would lead to a likelihood of confusion with our client's registered trademark.

Letter of January 3, 2007, *attached to* Motion at A-7. Less than two weeks later, Poly-America filed a complaint for a declaratory judgment against Stego in this court (case number 3:07-CV-0092-G). *See* Declaration of Robert J. Carlson in Support of Defendant Stego Industries, L.L.C.'s Motion to Dismiss ("Carlson Declaration"), Exhibit A, *attached to* Motion at B-4 to B-11. In a memorandum opinion and order dated November 19, 2008, the court dismissed Poly-America's complaint for lack of subject matter jurisdiction. *See* Carlson Declaration, Exhibit D, *attached to* Motion at B-37 to B-45. The court held that there was no actual controversy between the parties, as required by Article III of the Constitution and the Declaratory Judgment Act, *see* 28 U.S.C. § 2201(a), because Poly-America had not expressly claimed prior to filing suit that it had a right to produce its yellow vapor-barrier product without licensing Stego's trademark. *Id.* at B-44 to B-45.

In December 2008, Terry Mallory, Poly-America's senior sales manager, had a conversation with Paul Blasdel, a member of Stego, in which Mallory stated that "Poly-America believed it had a right to produce and sell yellow plastic sheeting as vapor barrier without a license and that Poly-America intended to begin selling the

yellow vapor barrier that it had been holding for nearly two years." Affidavit of Terry Mallory of April 17, 2009 ("Mallory Affidavit") at 1-2, *attached to* Plaintiff's Response to Defendant's Motion to Dismiss ("Response"). The parties dispute the precise content of Blasdel's response. According to Mallory, Blasdel "responded that if Poly-America did so, Stego would sue Poly-America for willful infringement of Stego's trademark." Mallory Affidavit at 2. According to Blasdel, Mallory asked him "whether Stego would sue Poly-America if Poly-America began selling a yellow vapor barrier product," and Blasdel "responded by stating that if the product infringed upon Stego's trademark rights, then Stego would enforce these rights against Poly-America." Supplemental Declaration of Paul Blasdel in Support of Defendant Stego Inudstries, L.L.C.'s Motion to Dismiss at 1, *attached to* Defendant Stego Industries, L.L.C.'s Reply in Support of Its Motion to Dismiss ("Reply") at A-1.

On December 17, 2008, Poly-America filed this action for a declaratory judgment. Poly-America seeks a judicial declaration that: (1) Poly-America has not infringed and will not infringe Stego's trademark; (2) Stego's trademark is not registrable; (3) Stego has no trade-dress protection in the color yellow as applied to plastic vapor-barrier sheeting in the construction; and (4) Stego is liable for unfair competition for making false or fraudulent declarations or representations in obtaining its trademark. Complaint at 4-7. On March 30, 2009, Stego moved to dismiss Poly-America's complaint for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that "no justiciable case or controversy existed between the parties at the time Poly-America initiated this action."  Motion at 1.

### B.  Procedural Background

#### 1.  *Rule 12(b)(1) Standard*

Rule 12(b)(1) authorizes the dismissal of a case for lack of jurisdiction over the subject matter.  FED. R. CIV. P. 12(b)(1).  A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) must be considered before any other challenge because "the court must find jurisdiction before determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citation and internal quotation marks omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception.") (citation and internal quotation marks omitted).  On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992).

In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413). Once a challenge to subject-matter jurisdiction is raised under Rule 12(b)(1), the burden falls upon the party seeking to invoke the court's jurisdiction to prove that jurisdiction is proper. *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction." *Id.* (citation and internal quotation marks omitted).

2. *The Declaratory Judgment Act*

The Declaratory Judgment Act allows federal courts the opportunity to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). A declaratory judgment is often sought before a completed injury-in-fact has occurred, *United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000), and "declaratory actions contemplate an '*ex ante* determination of rights,'" *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir.) (quoting *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990)), *cert. denied*, 513 U.S. 919 (1994). However, the Declaratory

Judgment Act does not extend the subject matter jurisdiction of the court beyond the limits delineated in Article III of the United States Constitution. *Skelly Oil Company v. Phillips Petroleum Company*, 339 U.S. 667, 671 (1950); see also *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001) (en banc) ("[T]he Declaratory Judgment Act does not itself grant federal jurisdiction."). Declaratory judgments "still must be limited to the resolution of an 'actual controversy.'" *United Transportation*, 205 F.3d at 857 (citing *Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 239-40 (1937)); see also *Standard Fire Insurance Company v. Sassin*, 894 F. Supp. 1023, 1026 (N.D. Tex. 1995) (Sanders, J.) ("The Declaratory Judgment Act does not exempt federal district courts from the constitutional requirement that there be an actual controversy between the parties."). At the same time, "[i]t is well-established that the phrase 'actual controversy' in § 2201(a) includes any controversy over which there is Article III jurisdiction." *Caraco Pharmaceutical Laboratories, Limited v. Forest Laboratories, Inc.*, 527 F.3d 1278, 1290 (Fed. Cir. 2008) (citing *Aetna Life Insurance Company*, 300 U.S. at 239-40), *cert. denied*, __ U.S. __, 129 S. Ct. 1316 (2009); see also *Young v. Vannerson*, 612 F. Supp. 2d 829, 840 (S.D. Tex. 2009) ("[S]howing a controversy for the purpose of a declaratory judgment action requires no greater showing than is required under Article III." (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-27 (2007))).

Case 3:08-cv-02224-G   Document 19   Filed 03/08/10   Page 8 of 20   PageID 169

The Supreme Court has held that the Declaratory Judgment Act grants discretion to district courts rather than an absolute right to litigants. *Wilton v. Seven Falls Company*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); see also *Sherwin-Williams Company v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). The Fifth Circuit has outlined the three steps a district court must follow to determine whether to decide or dismiss a declaratory judgment case: first, the district court must determine whether the declaratory action presents a justiciable actual controversy; second, the district court must determine whether it has the authority to grant declaratory relief; and third, the court must determine whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams*, 343 F.3d at 387.

## II. ANALYSIS

Stego argues that the court should dismiss the complaint for two reasons. First, Stego contends that there is no actual controversy between itself and Poly-America. Motion at 3-5. Second, Stego contends that even if there is an actual controversy between the parties, the court should exercise its discretion to decline jurisdiction based on the factors enumerated in *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). Motion at 6-8.


## A.  Actual Controversy

While there is no mechanistic process to determine whether an "actual controversy" exists in a declaratory judgment action, the Supreme Court has clearly instructed that "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 273 (1941)); see also *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 382 (1980) (stating that Article III's case-or-controversy requirement limits "federal courts to questions presented in an adversary context . . . .") (citation and internal quotation marks omitted).  Further, the controversy "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corporation*, 383 F.2d 662, 665 (5th Cir. 1967)); see also *C&H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 493 (5th Cir. 2000) ("Federal courts are not in the business of rendering advisory opinions.").

In *SanDisk Corporation v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), the Federal Circuit articulated a two-part test for determining whether a dispute over the scope of a patent has ripened into an actual controversy:

> [1] where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and [2] where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*Id.* at 1381. The same two-part test is applicable to trademark disputes. See, *e.g.*, *Young*, 612 F. Supp. 2d at 833, 841(applying the *SanDisk* standard to a declaratory-judgment action involving a trademark dispute); see also *Starter Corporation v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996) ("Declaratory judgment actions involving trademarks are analogous to those involving patents, and principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks.") (citations omitted).

In this case, the second part of the *SanDisk* test is concededly satisfied -- Stego does not dispute that Poly-America has asserted that it has the right to manufacture a yellow vapor-barrier product without obtaining a license from Stego. *See* Complaint at 2-3. However, Stego contends that Poly-America cannot satisfy the first part of the *SanDisk* test for two reasons. First, Stego contends that it has not "asserted any rights" against Poly-America under its trademark. Reply at 1. Second, Stego

contends that even if it has asserted its rights, it has not done so "based on certain identified ongoing activities or certain identified planned activities" of Poly-America because it has not had the chance to view or examine Poly-America's yellow vapor-barrier product. *Id.* at 3.

1. *Assertion of Rights*

First, Stego argues that it "has never asserted any rights against Poly-America at all" but instead has merely "made general statements communicating ownership of intellectual property rights and a general willingness to enforce those rights." *Id.* at 1. The court does not agree. An actual controversy can exist before a declaratory judgment plaintiff faces guaranteed litigation or is certain that its conduct is illegal. See *SanDisk*, 480 F.3d at 1381 ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in a position of either pursuing *arguably* illegal behavior or abandoning that which he claims a right to do." (emphasis added)). The Supreme Court has held that all that is required to create an actual controversy under the Declaratory Judgment Act is for the would-be defendant to take some affirmative act that puts the would-be plaintiff "to the choice between abandoning his rights or *risking* prosecution." *MedImmune*, 549 U.S. at 129 (emphasis added). Here, the evidence shows that Stego has asserted its rights against Poly-America on two occasions: in the January 3, 2007, letter from Lee Johnson to Poly-America, and in the December 2008 conversation between Terry Mallory and

Paul Blasdel. The court would so conclude even if Blasdel's account of the December 2008 conversation were the only account in the record. A potential declaratory-judgment defendant cannot defeat jurisdiction over a declaratory judgment action by couching specific assertions of its rights in generally applicable language. Cf. *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366-67 (5th Cir. 1995) (explaining that a plaintiff may not defeat removal jurisdiction by using artful pleading to disguise a claim arising under federal law as one arising exclusively under state law).

The only authority Stego cites on this point is *SanDisk*, but *SanDisk* supports a finding that Stego has asserted its rights. In *SanDisk*, the declaratory judgment defendant told the plaintiff that it had "absolutely no plan whatsoever to sue" the plaintiff. 480 F.3d at 1382. But the court declined to hold that this single statement rendered the controversy between the parties non-justiciable because the defendant's overall course of conduct demonstrated "a preparedness and willingness to enforce its … rights." *Id.* at 1382-83. Here, both the cease-and-desist letter and Blasdel's statements in his conversation with Mallory were affirmative acts that demonstrated Stego's willingness to enforce its trademark rights. Both were intended to induce Poly-American to refrain from selling its yellow vapor-barrier product. As a result, the court finds that each was an instance of Stego asserting its rights under its trademark. See also *IMS Health, Inc. v. Vality Technology Inc.*, 59 F. Supp. 2d 454, 461 (E.D. Pa.

1999), *cited with approval in SanDisk*, 480 F.3d at 1381 (upholding subject matter jurisdiction under the Declaratory Judgment Act on the ground that, "while the series of correspondence between the parties is not replete with explicit threats to sue, the specter of litigation undoubtedly hung over the . . . dealings between the parties").

### 2. *Certain Identified Activities*

Stego next argues that the first part of the *SanDisk* test is not satisfied because Stego has not asserted any rights based on the "certain identified ongoing or planned activity," *SanDisk*, 480 F.3d at 1381, of Poly-America. Motion at 5. Specifically, Stego contends that for this case to present an actual controversy under the Declaratory Judgment Act, "Stego must have had at least the opportunity to view Poly-America's proposed product and evaluate its activities." *Id.* However, the court concludes that Stego's position is foreclosed by the Supreme Court's decision in *MedImmune*.

*MedImmune* announced a "more lenient legal standard" that "facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008); see also *Starter Corporation*, 84 F.3d at 596 ("Declaratory judgment actions are particularly useful in resolving trademark disputes . . . . Accordingly, in such a case, the finding of an actual controversy should be determined with some liberality."). For many years prior to *MedImmune* the Federal Circuit had applied a two-prong test

to determine whether an actual controversy existed in declaratory judgment actions involving patents. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008); see also *Texas v. West Publishing Company*, 882 F.2d 171, 175 (5th Cir. 1989) (adopting the Federal Circuit's two-prong test for use in all types of intellectual-property disputes), *cert. denied*, 493 U.S. 1058 (1990). "The first prong examined whether conduct by the patentee created a 'reasonable apprehension' of suit on the part of the declaratory judgment plaintiff. The second prong focused on the declaratory judgment plaintiff's conduct, and examined whether there had been 'meaningful preparation' to conduct potentially infringing activity." *Cat Tech*, 528 F.3d at 879 (citations omitted). The Supreme Court held in *MedImmune* that these requirements "were more rigorous than warranted by the principle and purpose of declaratory actions," *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009), and replaced the two-prong test with a "totality-of-the-circumstances test" that looks to "the particular facts and relationships involved," *Id.* See also *MedImmune*, 549 U.S. at 127 (requiring that "the dispute be 'definite and concrete, touching the legal relations of parities having adverse legal interests'; and that it be 'real and substantial' and 'admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts'" (quoting *Aetna Life Insurance*, 300 U.S. at 240-

- 14 -

41)) (brackets omitted)).[1] Stego's contention that an actual controversy cannot exist if the defendant has not had an opportunity to view the potentially infringing product runs counter to *MedImmune*'s teaching "that there is no bright-line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not," *Young*, 612 F. Supp. 2d at 840.

In addition, Stego's position cannot be reconciled with the well-settled line of precedent that holds that "a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement" so long as that party can make "a showing of 'meaningful preparation' for making or using that product." *Cat Tech*, 528 F.3d at 881 (citations omitted); see also *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1354, 1356 (Fed. Cir. 2004) (vacating and remanding an order dismissing a declaratory judgment action in

---

[1] To be clear, the two-prong test that the Supreme Court disapproved of in *MedImmune* is distinct from the two-part test articulated in *SanDisk*. *SanDisk* examined *MedImmune*'s impact on the first prong -- the "reasonable apprehension of suit" requirement -- of the Federal Circuit's two-prong test and concluded that *MedImmune* had rejected the reasonable-apprehension-of-suit test and replaced it with a totality-of-the-circumstances test. 480 F.3d at 1380-81. *SanDisk* then announced a new two-part test and held that satisfying that two-part test is one way that a plaintiff can prove the existence of an actual controversy within *MedImmune's* totality-of-the-circumstances framework. *Id.* at 1381. *SanDisk* opted to "leave for another day the effect of *MedImmune*, if any, on the second prong" of the Federal Circuit's traditional two-prong test. *Id.* at 1380 n.2. The Federal Circuit took up that question in *Cat Tech LLC* and concluded that "meaningful preparation to conduct potentially infringing activity remains an important element in the totality of the circumstances which must be considered in determining whether a declaratory judgment is appropriate." *Cat Tech LLC*, 528 F.3d at 880.

which the defendant "had not seen [the plaintiff's] product" at the time the action was filed on the ground that a declaratory judgment plaintiff "is not required to verify the extent to which the accuser has studied the accused product before acting to declare its commercial rights").[2]  Poly-America can make a showing that it has undertaken meaningful preparation to make a potentially infringing product:  as of January 4, 2007, Poly-America had produced approximately 80,000 pounds of yellow vapor-barrier sheeting product.  Affidavit of Terry Mallory of April 30, 2007, at 2, *attached to* Response.  This level of meaningful preparation is enough to create an actual controversy, irrespective of whether Stego has had a chance to view Poly-America's yellow vapor-barrier product.  See *Young*, 612 F. Supp. 2d at 844 (collecting cases) ("If . . . a party has taken steps such as producing prototypes or samples of the allegedly infringing products, . . . or otherwise investing significant funds in preparation to produce the products, the case or controversy requirement is satisfied.").

Stego relies on *Panavise Products, Inc. v. National Products, Inc.*, 306 Fed. Appx. 570 (Fed. Cir. 2009), but *Panavise* does not compel the conclusion that a declaratory judgment defendant must have viewed the plaintiff's product before the plaintiff can

---

[2] Stego correctly notes that this line of precedent was developed pre-*MedImmune*, Reply at 4, but it nonetheless remains relevant here.  If a declaratory judgment action satisfies the Federal Circuit's more stringent two-prong test for determining whether an actual controversy exists, then logically it must also satisfy the more relaxed requirements of *MedImmune*.

file suit. It is true that the declaratory judgment defendant in *Panavise* had never "seen or evaluated" the plaintiff's product. *Id.* at 572. However, that fact was not dispositive. *Panavise* holds that an actual controversy under the Declaratory Judgment Act requires a threat of injury that is "'*caused by the defendants*.'" *Id.* at 572 (quoting *Prasco, LLC v. Medicis Pharmaceutical Corporation*, 537 F.3d 1329, 1338 (Fed. Cir. 2008)) (emphasis in original). The alleged threat of injury in *Panavise* was nothing more than the plaintiff's "'purely subjective or speculative'" fear of litigation. *Id.* (quoting *Prasco*, 537 F.3d at 1338). The *Panavise* court emphasized that the defendant company "was not even aware" that the plaintiff had manufactured an allegedly infringing product "until after [the plaintiff's] complaint was filed" and that the defendant and its lawyers "had absolutely no contact" with the plaintiff about the plaintiff's product "prior to the date its complaint was filed." *Id.* (internal quotation marks omitted); see also *Prasco*, 537 F.3d at 1333-34 (affirming the dismissal for lack of subject-matter jurisdiction of a declaratory-judgment action in which the defendant did not learn of the existence of the allegedly infringing product until it was served with the complaint). *Panavise* stands for the proposition that the threat of injury to a declaratory judgment plaintiff must be created by some affirmative act of the defendant. Nothing in *Panavise* suggests that it is impossible for a defendant to create such a threat if it has not viewed the plaintiff's potentially infringing product. Here, Stego sent a letter to Poly-America in late 2006 to discourage it from selling a yellow

vapor-barrier product and reaffirmed its intention to protect its trademark in December 2008.  Therefore, the court concludes that Stego asserted rights under its trademark based on certain identified ongoing or planned activity of Poly-America and thus that this action presents a justiciable actual controversy.

### B.  Discretion to Decline Jurisdiction

Finally, Stego argues that even if this action constitutes an actual controversy, the court should exercise its discretion to decline jurisdiction.  Motion at 6-8.  The Declaratory Judgment Act "confers discretion on the courts rather than an absolute right on a litigant." *Sherwin-Williams*, 343 F.3d at 389 (quoting *Wilton*, 15 U.S. at 287).  The Fifth Circuit has identified seven nonexclusive factors district courts should consider when deciding whether to adjudicate or dismiss a declaratory-judgment action:  (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist in allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state

suit between the same parties is pending. *Trejo*, 39 F.3d at 590-91. These factors weigh in favor of dismissal in relatively few cases. "'When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal.'" *SanDisk*, 480 F.3d at 1383 (quoting *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir.1993)).

Stego contends that the lack of a parallel or competing suit in another jurisdiction merely renders factors (1), (4), (5), (6), and (7) "either neutral or inapplicable." Motion at 8. However, in every case that Stego cites in which a district court exercised its discretion to decline jurisdiction under the Declaratory Judgment Act, there was a parallel action pending in another forum at the time the court granted dismissal. The lack of a parallel proceeding in a different forum between Stego and Poly-America does not require the court to accept jurisdiction, but "it is a factor that weighs strongly against dismissal." See *Sherwin-Williams*, 343 F.3d at 394.

The court also concludes that *Trejo* factors (2) and (3) do not militate in favor of dismissing this action.

> The filing of every lawsuit requires forum selection. Federal declaratory judgments suits are routinely filed in anticipation of other litigation. . . . Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of . . . litigation [in a

> different forum], is not in itself improper anticipatory litigation or otherwise abusive "forum shopping."

*Sherwin-Williams*, 343 F.3d at 391. The *Trejo* factors point toward dismissal only in "a narrower category of federal declaratory judgment lawsuits filed for reasons found improper and abusive, other than selecting a forum or anticipating related litigation." *Id.* Stego does not contend that Poly-America filed this action to bring about a change in the governing substantive law, see *Sherwin-Williams* at 397, or for some other improper or abusive reason. Therefore, the court declines to exercise its discretion to dismiss this action.

### III. CONCLUSION

For the reasons discussed above, Stego's motion to dismiss Poly-America's complaint for lack of subject matter jurisdiction is **DENIED**.

**SO ORDERED**.

March 8, 2010.

                                             */s/ A. Joe Fish*
                                           **A. JOE FISH**
                                           **Senior United States District Judge**