UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

POLY-AMERICA, LP,                )
                                 )
        Plaintiff,                )
                                 )    CIVIL ACTION NO.
VS.                              )
                                 )    3:08-CV-2224-G
STEGO INDUSTRIES, LLC,           )
                                 )
        Defendant.                )

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendant, Stego Industries, LLC ("Stego"), for summary judgment (docket entry 48). For the reasons set forth below, the motion is denied.

### I. BACKGROUND

#### A. Factual Background

The plaintiff, Poly-America, LP ("Poly"), brings this action against Stego for damages, injunctive relief, and a judgment declaring that Stego's trademark of the color yellow, as applied to polyethylene plastic sheeting used in the construction industry as a vapor barrier and vapor retarder, is not registerable under the Lanham

Act, 15 U.S.C. §§ 1051, *et seq.* (the "Act"), is not entitled to trade dress protection under the Act, and was fraudulently procured -- vís-a-vís intentional misrepresentations to the United States Patent and Trademark Office ("PTO") regarding the lack of functionality and utility of the color yellow when used in plastic vapor barriers -- in violation of the Act's unfair-competition provisions. *See generally* Complaint. Stego now moves for summary judgment, arguing that Poly has not raised a genuine issue of material fact, the color yellow is registerable under the Act and is not functional as a matter of law, and the undisputed facts show that Stego did not fraudulently obtain its trademark. *See* Stego Industries, LLC's Memorandum in Support of its Motion for Summary Judgment ("Stego Memorandum") at 1-2.

On December 9, 2003, the PTO issued a registration to Stego for a yellow color trademark, Registration No. 2,790,352 ("the mark"), which consisted of the color yellow as applied to "plastic sheeting used in the construction industry as a vapor barrier and as a vapor retarder." Registration No. 2,790,352, *attached to* Declaration of Terrell Miller in Support of Stego Industries, LLC's Motion for Summary Judgment ("Miller Declaration") *as* Exhibit B, *located in* Appendix in Support of Stego Industries, LLC's Motion for Summary Judgment ("Motion Appendix") at APP 13. This approval followed an initial rejection of the registration application because, according to the PTO, "the proposed mark appears to be functional. That is, the proposed mark consists of a color which serves a utilitarian

purpose." Prosecution History for the United States Trademark Registration No. 2,790,352 ("Prosecution History"), *attached to* Miller Declaration *as* Exhibit C, *located in* Motion Appendix at APP 15.  Particularly, the PTO examiner noted that "[i]n this case the proposed mark could be functional because the vapor barrier is more easily seen when installed and thereby allow contractors to ensure that the product is in place, a clear safety benefit." *Id.*  Stego responded to this initial rejection by proclaiming that yellow "serves only to identify the goods as those of the applicant" and the color was chosen because Stego considered it "distinctive." *Id.* at APP 19.  Stego also included in its response a copy of its advertisement, which touted the benefits of the Stego Wrap™ Vapor Barrier and specifically stated:

> Stego Wrap is yellow for a reason.  First, the natural extrusion of Stego Wrap polyolefin plastic & additives is a clear plastic. . . .  Bright yellow dye is added to distinguish Stego Wrap from these products.  Second, most vapor retarders are black poly laminations.  Black poly absorbs tremendous heat creating very hot jobsite conditions for laborers.  Third, punctures or tears (although unlikely) can be seen and easily repaired in our bright yellow membrane.

*Id.* at APP 27.  Stego used this advertisement on its website and in product binders sent to customers and prospective customers.  Defendant's Responses to Plaintiff's First Set of Requests for Admission, *located in* Appendix in Support of Poly-America L.P.'s Opposition to Motion for Summary Judgment ("Opposition Appendix") *as* Exhibit A, at APP. 04.

Stego is a distributor of the yellow plastic vapor barrier covered by the mark. Declaration of Marshall Grove in Support of Stego Industries, LLC's Motion for Summary Judgment ("Grove Declaration"), *located in* Motion Appendix, at APP 39 ¶ 2. Carroll Bryan ("Bryan") and Paul Blasdell ("Blasdell") are the only owners of Stego. Carroll Bryan Deposition ("Bryan Deposition") 65:16-18, Sept. 26, 2007, *located in* Opposition Appendix *as* Exhibit C, at APP. 22. According to Poly, when Stego started its business, contractors that used Stego's product discussed the fact that black vapor barriers absorbed heat and created hot jobsites. Poly-America L.P's Brief in Support of its Response to Stego Industries, L.L.C.'s Motion for Summary Judgment ("Response Brief") at 3 (*citing* Matthew Blasdell Deposition 23:11-14, Sept. 26, 2007, *located in* Opposition Appendix at APP. 26-27). Yet, Bryan -- who is himself an intellectual property attorney -- claims to have chosen the color yellow, "because he believed yellow was 'distinctive.'" *Id.* (*citing* Bryan Deposition 8:23-25; 9:19-22; 10:25-11:18; 17:21-18:6; 28:18-23, *located in* Opposition Appendix at APP. 11-13, 15-16, 17).

Poly is a manufacturer and distributor of plastic products, including vapor barrier. Response Brief at 4. In 2007, Poly manufactured yellow vapor barrier in response to a request from a customer. *Id.* After being threatened with a lawsuit by Stego, however, Poly elected not to sell yellow sheeting, and instead chose to file this action, seeking a declaration that Stego's trademark on the color yellow is invalid. *Id.*

In the interim, Poly has been manufacturing and selling an orange vapor barrier, but it has only sought a trademark on the name "Orange Guard" and not on the color orange for vapor barrier. *Id.* Poly has, however, applied for a trademark on the color orange "as applied to the drawstrings of" trash bags, U.S. Trademark Application Serial No. 85,174,910 (filed Nov. 11, 2010), a product that it manufactures and distributes. Stego Memorandum at 6; *see also* Stego Industries, LLC's Reply in Support of its Motion for Summary Judgment ("Reply") at 6-7.

### B. Procedural Background

Stego has moved for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[1] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real

---

[1] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

II. ANALYSIS

Stego contends that it is entitled to judgment as a matter of law because the undisputed facts show that the mark is valid and non-functional and Stego did not defraud the PTO. *See* Stego Memorandum at 9-18. Poly, on the other hand, argues that there remains genuine issues of material fact regarding whether the color yellow is functional because it affects the cost and quality of the vapor barrier or puts competitors at a significant non-reputational disadvantage, and whether Stego fraudulently procured the mark by representing to the PTO that the color yellow, as applied to vapor barrier used in the construction industry, is not functional. *See* Response Brief at 7-17. The court agrees with Poly.

"The Lanham Act gives a seller or producer the exclusive right to 'register' a trademark, and to prevent his or her competitors from using that trademark." *Qualitex Company v. Jacobson Products Company, Inc.*, 514 U.S. 159, 162 (1995) (internal citations omitted). "The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods."[2] *TrafFix Devices,*

---

[2] "Secondary meaning" obtains when "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456
(continued...)

*Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). The Act, however, "expressly limits the scope of trade dress protection by providing that 'the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.'"[3] *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir.) (*quoting* 15 U.S.C. § 1125(a)(3)), *cert. denied*, 537 U.S. 1071 (2002). The "functionality doctrine" prevents a producer from using trademark law to inhibit legitimate competition by controlling a useful product feature. *Qualitex*, 514 U.S. at 164. "If a product's functional features could be used as trademarks . . ., a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks [unlike patents] may be renewed in perpetuity)." *Id.* at 164-65.

Courts have distinguished "*de facto* functional features, which may be entitled to trademark protection, from *de jure* functional features, which are not." *Valu Engineering, Inc. v. Rexnord Corporation*, 278 F.3d 1268, 1274 (Fed. Cir. 2002). "In

---

[2](...continued)
U.S. 844, 851 n.11 (1982); see also *Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Company*, 550 F.3d 465, 476 (5th Cir. 2008), *cert. denied*, __ U.S. __, 129 S.Ct. 2759 (2009).

[3] Registration of a trademark on the PTO's principal register provides "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the [registrant's] ownership of the mark, and of the [registrant's] exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); see also *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1288 (Fed. Cir. 2010).

essence, *de facto* functional means that the design of a product has a function, *i.e.*, a bottle of any design holds fluid. *De facto* functionality does not necessarily defeat registrability." *Id.* *De jure* functionality, on the other hand, means that a product has a certain feature because "it works better" with that feature. See *id.*

The Supreme Court recognizes two tests for determining whether a product feature, such as a trademark or trade dress, is *de jure* functional. *TrafFix*, 532 U.S. at 32. "In general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Id.* (internal quotation marks omitted). This is the "traditional" definition of functionality, and "under this traditional definition, if the product feature is 'the reason the device works' then the feature is functional." *Eppendorf*, 289 F.3d at 355.

The second test for functionality is the "competitive necessity" test. *Id.* at 356. Under this test, "a functional feature is one that the 'exclusive use of which would put competitors at a significant non-reputation-related advantage.'" *Id.* (quoting *Qualitex*, 514 U.S. at 165). This test is an expansion of the traditional test, and is not of itself a comprehensive definition of functionality. *Id.* Indeed, "[t]he primary test for functionality is the traditional test, and there is no need to consider the 'competitive necessity' test where a product feature is functional under the traditional definition." *Id.* (citing *TrafFix*, 532 U.S. at 33-35).

A.  Functionality of the Color Yellow

"Functionality is a question of fact, and depends on the totality of the evidence." *Valu*, 278 F.3d at 1273 (internal citation omitted). That question, however, is "subject to resolution on a summary judgment motion" in appropriate cases. *Global Manufacture Group, LLC v. Gadget Universe.com*, 417 F. Supp. 2d 1161, 1167 (S.D. Cal. 2006) (citing *Disc Golf Association, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)). This is not such a case.

Stego argues that the color yellow as applied to polyethylene plastic used in the construction industry as a vapor barrier and vapor retarder is an "arbitrary flourish" designed to distinguish its products from those belonging to its competitors. Stego Memorandum at 10-11, 12. According to Stego, "The functionality of these plastic sheet products is a product of their specific polymer formulation and manufacturing process . . . the products' strength properties and ability to limit or block the flow of moisture and gases do not depend on the addition of any color. Likewise, the addition of a color pigment, whether yellow or otherwise, does not lower the cost of the products." *Id.* at 11. Stego claims that "it cannot be disputed that plastic sheeting products for use as vapor barriers or retarders an be manufactured without any color and still meet industry needs . . . . It is also undisputed that both Stego's and Poly-America's plastic sheeting products are naturally colorless, and therefore

suitable for enabling a viewer to sufficiently see punctures or tears in the sheeting so as to enable its repair." *Id.* at 10.

Poly counters that Stego's own advertisement specifically identifies utilitarian benefits of yellow-colored vapor barrier. Response Brief at 10. Poly contends that the color yellow affects the quality of the vapor barrier because the color yellow "absorb[s] less heat, which increases the quality of the product," and "improves worker efficiency by making it more comfortable to work on the vapor barrier in hot jobsite conditions." *Id.* at 7 (*citing* Declaration of Terry Mallory in Support of Poly-America, LP's Response to Motion for Summary Judgment ("Mallory Declaration") ¶ 12, *located in* Opposition Appendix at APP. 33). Moreover, Poly argues, "[t]he color yellow offers an excellent visual contrast with both the rebar and the ground . . . . [which] makes it safer and easier to work on the vapor barrier . . . [and] easier to identify tears in the vapor barrier." *Id.* (*citing* Mallory Declaration ¶¶ 13-14, *located in* Opposition Appendix at APP. 33). Poly also argues that a "yellow vapor barrier is less expensive to produce than orange and certain other colors of vapor barrier . . . . [which has] a significant impact on a company's ability to compete in the market." *Id.* at 8 (*citing* Mallory Declaration ¶ 10, *located in* Opposition Appendix at APP. 35). Finally, Poly insists that Stego's trademark on the color yellow puts competitors at a significant non-reputation-related disadvantage because other colors -- including other bright and light colors -- are not "equally usable," cost more to manufacture, and do

not offer the same visual contrast with rebar and colored soils as the color yellow does. *Id.* at 16.

Where, as here, the movant bears the burden of proof at trial on an issue for which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor," *Fontenot*, 780 F.2d at 1194 (emphasis in original); otherwise, there is a genuine issue of fact and summary judgment cannot be granted. See *Anderson*, 477 U.S. at 248. Stego has failed to carry its burden. Poly has raised genuine issues regarding whether (1) the color yellow has utilitarian benefits, including heat absorption and visual contrast with rebar and soil; (2) the color yellow affects the cost of manufacturing the vapor barrier; (3) the color yellow is either the best or one of the best colors[4] for vapor barriers used at construction sites; and (4) Stego's advertisement of its vapor barrier promoted utilitarian benefits of its yellow vapor barrier. Poly's evidence on these points sufficiently raises a fact issue regarding the functionality of the color yellow as applied to vapor barrier used in the construction industry. See *Natural Polymer International Corporation v. S & M Nutec, L.L.C.*, No. 3:03-CV-0461-P, 2004 WL 912568, at *3

---

[4] See *Canady*, 629 F.3d at 1289 (explaining that "mere taste or preference cannot render a color -- unless it is 'the best, or at least one of a few superior designs' -- *de jure* functional.")

(N.D. Tex. April 27, 2004) (Solis, J.). Accordingly, Stego's motion for summary judgment on the functionality question is denied.

B. Fraudulent Procurement of the Mark

Poly argues that "[b]ecause the evidence creates a question of material fact as to the functionality of yellow and because Stego touted in its advertisements to its customers and prospective customers the benefits of yellow over other darker colored vapor barriers, there is a question of fact as to whether Stego engaged in unfair competition by misrepresenting to the PTO that the color was not functional and seeking a Mark that it then used against its competitors generally and Poly-America specifically." Response Brief at 18. The court agrees.

To prevail on its fraudulent procurement and unfair competition claim, Poly must prove by clear and convincing evidence: "1) the false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false (scienter); 3) the intention to induce action or refraining from action in reliance on the misrepresentation; 4) reasonable reliance on the misrepresentation; and 5) damages proximately resulting from such reliance." *Texas International Property Associates v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 592 (N.D. Tex. 2009) (Kinkeade, J.); *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988). "[I]n the trademark context, a material misrepresentation arises only if the registration should not have issued if the truth were known to the

examiner." *San Juan Products*, 849 F.2d at 473 (*quoting* 2 J. McCarthy, Trademarks and Unfair Competition § 31:21, at 606).

In the present case, the undisputed facts show that the PTO rejected Stego's initial application for registration because "the proposed mark could be functional because the vapor barrier is more easily seen when installed and thereby allow contractors to ensure that the product is in place, a clear safety benefit." Prosecution History, *attached to* Miller Declaration *as* Exhibit C, *located in* Motion Appendix at APP 15. Indeed, Stego was not awarded the mark until after it responded to this initial rejection by affirming that yellow "serves only to identify the goods as those of the applicant" and the color was chosen because Stego considered it "distinctive." *Id.* at APP 19. As discussed above, a factual determination must be made regarding whether the color yellow is *de jure* functional and therefore not registerable under the Lanham Act. See *supra*. If Poly can prove that the color yellow is functional, it can prevail on its fraudulent procurement claim by proving the remaining elements of the claim -- including that registration of the mark would not have issued but for this alleged misrepresentation -- by clear and convincing evidence. See *L.D. Kichler Company v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999). Accordingly, Stego is not entitled to judgment as a matter of law on Poly's fraudulent procurement and unfair competition claim.

III. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **DENIED**.

**SO ORDERED**.

April 21, 2011.

_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**